## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## NORTHERNDIVISION

| | |
|---|---|
| WILLIAM J. POPPE , | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:14-CV-00004 JAR |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM AND ORDER

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying William J. Poppe's ("Poppe") application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, et seq.

### I.    Background

On August 3, 2010, Poppe filed an application for disability insurance under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq*. (Tr. 127-33) The Social Security Administration ("SSA") denied Poppe's claim on November 2, 2010. (Tr. 72-78)  He filed a timely request for a hearing before an administrative law judge ("ALJ") on December 16, 2010. (Tr. 79-80) Following a hearing on June 20, 2012 (Tr. 26-66), the ALJ issued a written decision on August 20, 2012, upholding the denial of benefits. (Tr. 11-21) Poppe requested review of the ALJ's decision by the Appeals Council. (Tr. 7)  On November 29, 2013, the Appeals Council denied Poppe's request for review.  (Tr. 1-6)  Thus, the decision of the ALJ stands as the final decision of the Commissioner. See Sims v. Apfel, 530 U.S. 103, 107 (2000).

Poppe filed this appeal on January 10, 2014. (Doc. 1) The Commissioner filed an Answer. (Doc. No. 10) Poppe filed a Brief in Support of his Complaint.[1] (Doc. No. 14) The Commissioner filed a Brief in Support of the Answer. (Doc. No. 21) Poppe did not file a Reply Brief.

## II. Decision of the ALJ

The ALJ determined that Poppe meets the insured status requirements of the Social Security Act through December 31, 2015, and had not engaged in substantial gainful activity since April 17, 2010, the alleged onset date of disability. (Tr. 13) The ALJ found Poppe had the severe impairments of thoracic scoliosis, osteoarthritis, fibromyalgia, and migraine headaches, but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 13-14)

After considering the entire record, the ALJ determined Poppe had the residual functional capacity ("RFC") to perform light work, except that he could lift and carry no more than 20 pounds occasionally and 10 pounds frequently. (Tr. 14) He could never balance and only occasionally climb, stoop, kneel, crouch, crawl, and climb ramps, stairs, ladders, ropes, and scaffolds. (Id.) Poppe could only occasionally push and pull with his upper extremities and had to avoid concentrated exposure to excessive vibration, hazardous machinery, and unprotected heights. (Id.) The ALJ found Poppe unable to perform any past relevant work, but that there are jobs that exist in significant numbers in the national economy that he can perform, including an usher ticket taker, light assembler, and small product combination assembler. (Tr. 19-20) Thus,

---

[1] The Commissioner notes that Poppe's brief is not in compliance with the Local Rules of the United States District Court for the Eastern District of Missouri, which require all filings, unless otherwise permitted by leave of Court, to be double spaced typed. See E.D.Mo. L.R. 2.01. His 15-page brief, one and a half spaced, in font much smaller than standard 12-point, results in circumvention of the Court's 15-page limitation. See E.D.Mo. L.R. 4.01(D). The Court will overlook the error in this case and suggests that counsel follow the Rules in future briefs.

the ALJ concluded that a finding of "not disabled" was appropriate. (Tr. 21) Poppe appeals, arguing a lack of substantial evidence to support the Commissioner's decision.

## III. Administrative Record

The following is a summary of the relevant evidence before the ALJ.

### A. Hearing Testimony

The ALJ held a hearing in this matter on June 20, 2012. The ALJ heard testimony from Poppe and Bob Hammond, a vocational expert.

#### 1. Poppe's testimony

Poppe was 51 years old at the time of the hearing and living alone. (Tr. 32) He has two adult children. (Id.) He has a high school education. (Tr. 33) Poppe worked as a truck driver for 30 years. (Tr. 45) For the past eight years, up until April 2010, he drove for GC Potterfield. (Tr. 33-34, 44-45) No lifting was involved. (Tr. 44) In addition, Poppe operated a cattle farm, Bill Poppe Farms. (Tr. 45) His children took over the farm in 2002, but it is still in his name until they get the notes paid off. The farm has taken a loss over the past two years. (Tr. 32-35)

Poppe last worked on April 18, 2010 because of pain. He was having migraines six days a week, blurry vision, cramping in his hands and feet, and pain in his legs and back. (Tr. 35-37) Poppe testified his pain was so great that he couldn't focus on his driving. He felt unsafe taking pain killers while driving, "so [I] needed to quit." (Tr. 58) He had been receiving unemployment benefits, but that ran out. (Tr. 33-34) He sought employment after he stopped working in April 2010, but was unsuccessful. (Tr. 46)

Poppe's treating physician is Wendell Nickerson, D.O. (Tr. 37) Poppe testified he has suffered from migraines his whole life. (Tr. 39) He was treating them with Tylenol up until five years ago, when his doctor put him on anti-depressant and seizure medication to help control

3

them. (Id.) The medication helps the top half of his head, but not the bottom half. (Tr. 40) He has had four strokes- two at the age of 18, one at the age of 19, and one in 2010. (Tr. 40) Poppe did not go to the hospital following the stroke in 2010. Poppe stated he knew it was a stroke because the symptoms were the same as the last three, with sharp pain in the right side of his head, then a fuzzy feeling, and then everything on the left side fading away. He was treated with medication at Calvary Medical Center but was not hospitalized. (Tr. 40-41, 50-52, 55) He has no feeling over 40% of his body. (Tr. 56) His residual symptoms include numbness, difficulty walking, and issues with balancing. (Tr. 56-57)

Poppe was diagnosed with fibromyalgia in 2009 by Diane Watson, an alternative medicine provider, who then referred him to Dr. Nickerson (Tr. 41) He also has arthritis in his neck, which he treats with narcotic pain killers 3 to 4 times daily. (Tr. 42) Poppe has been without medical insurance since 2010. (Tr. 33, 42-44)

On a typical day Poppe gets up and showers – "move[s] around," does a few dishes. Then by around 10:30-11:00, he is drowsy from his medications, so he will sleep for a couple of hours. (Tr. 46) He will watch a movie or sit out on his deck and visit with a neighbor. (Id.) He usually gets tired and weak by mid-afternoon, so he'll sleep for 45 minutes. (Tr. 46-47) Poppe eats dinner and then sits in a chair for a while or lies down. He alternates between sleeping in bed and a chair because of pain in his legs, shoulders and arms. (Tr. 47) He doesn't get much more than three hours of sleep in a night. (Tr. 54) Poppe does his laundry but doesn't fold anything, leaving his clothes in piles. (Tr. 48) He can't stand up to do dishes; some neighbor girls help him with the dishes and other housework. (Id., Tr. 54) Poppe doesn't drink, smoke or use drugs, other than his prescription medication. (Tr. 49) He has a few friends and will get together with them

4

occasionally. (Tr. 48) He has no hobbies. He used to like to hunt, but says he doesn't have much desire to do anything. (Tr. 49)

Poppe testified that he can stand for about 30-40 minutes, walk for 200 yards, and sit in a padded chair for an hour to an hour and a half. (Tr. 52) He avoids lifting anything so he doesn't strain the muscles in his neck which then triggers a migraine. (Tr. 52-53)

### 2.    Testimony of Vocational Expert

Vocational expert, Bob Hammond, testified regarding Poppe's vocational history as follows. Poppe has been a farmer of livestock, code 421.161-010, with a specific vocational preparation ("SVP") of 7 and classified by the Dictionary of Occupational Titles ("DOT") as heavy work, and a truck driver, code 905.663-014, with an SVP of 4, classified as medium work. (Tr. 61) Because Poppe describes as more toward the light work categories, Hammond classified his past work as somewhere between light and medium (Tr. 61-62)

For hypothetical one, the ALJ asked Hammond to assume a person with the vocational factors identified (aged 48 to 49, high school degree from a technical school, and claimant's past work experience) capable of performing light work with the following limitations: frequently climbing ramps or stairs; occasionally climbing ladders, ropes, or scaffolds; frequently balancing, stooping, kneeling, crouching, crawling; avoiding concentrated exposure to excessive vibration; and avoiding concentrated exposure to hazardous machinery and unprotected heights. He determined that such a person would be unable to perform any of Poppe's past work. (Tr. 62) Such a person would, however, be able to perform a job such as usher/ticket taker, code 344.677-014, SVP of 2, light work. There are 4,500 such positions locally and 136,000 nationally. (Tr. 63) In addition, such a person could perform the job of assembler II, code 723.684-018, SVP of 2, light. This position is specific to the lighting industry. There are 5,600 such positions locally

and 204,000 nationally. (Tr. 63) Finally, there is a combination of small product assembly positions that a person could do, primarily bench assembly, code 706.684-022, SVP of 2, light. There are 3,400 locally and 148,000 nationally. (Tr. 63) It was Hammond's testimony that an individual in either of the two assembly positions would have to maintain a 95 percent rate of productivity, persistence and pace for the shift. (Tr. 64) The usher/ticket taker position requires persistence and pace of 90 percent; anything below that rate would eliminate the position. (Tr. 64-65) Regarding absenteeism for these types of jobs, Hammond testified that after a probationary period of 90 days, the policy is 1.5 days per month. (Tr. 65)

For the second hypothetical, the ALJ asked Hammond to assume the same limitations from the first hypothetical with the following additional limitation: that the person was limited to only occasional push/pull; only occasionally climbing ramps or stairs, ladders, ropes, or scaffolds; never balancing; only occasionally kneeling, crouching, crawling, stooping. He concluded that all of these jobs would be the same. (Id.)

Finally, if the individual was further limited to only occasional reaching, handling, fingering or feeling, it was Hammond's testimony that all of these jobs would be eliminated and that no other jobs would exist in the economy for this hypothetical claimant. (Tr. 63-64)

## B.    Medical Records

The ALJ summarized Poppe's medical records at Tr. 17-19. Relevant medical records are discussed as part of the analysis.

## IV.    Standards

The Social Security Act defines as disabled a person who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to

6

last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); see also Brantley v. Colvin, 2013 WL 4007441, at * 2 (E.D. Mo. Aug. 2, 2013). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920(a), 404.1520(a). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). First, the claimant must not be engaged in "substantial gainful activity." 20 C.F.R. §§ 416.920(a), 404.1520(a). Second, the claimant must have a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c), 404.1520(c). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001).

Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has

one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

Before considering step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is defined as "the most a claimant can do despite [his] limitations." Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). At step four, the ALJ determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); McCoy v. Astrue, 648 F.3d 605, 611 (8th Cir. 2011). If the claimant can still perform past relevant work, he will not be found to be disabled; if the claimant cannot, the analysis proceeds to the next step. Id.

At step five, the ALJ considers the claimant's RFC, age, education, and work experience to see if the claimant can make an adjustment to other work in the national economy. 20 C.F.R. §§ 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, then he will be found to be disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 404.1520(a)(4)(v). Through step four, the burden remains with the claimant to prove that he is disabled. Brantley, 2013 WL 4007441, at *3 (citation omitted). At step five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. Id. The Commissioner may refer to the Medical-Vocational Guidelines or "Grids," 20 CFR Part 404, Subpart P, Appendix 2,<sup>2</sup> to meet this burden. Pearsall v. Massanari, 274 F.3d

---

<sup>2</sup> The Grids "are a set of charts listing certain vocational profiles that warrant a finding of disability or non-disability." Phillips v. Astrue, 671 F.3d 699, 702 (8th Cir. 2012). "If the ALJ's findings as to RFC, age, education, and work experience fit any of the combinations of those criteria contained in the Tables in Appendix 2 to Part 404, then the ALJ must reach the conclusion (either 'disabled' or 'not disabled') directed by the relevant Rule or line of the applicable Table." Id. (quoting Reed v. Sullivan, 988 F.2d 812, 816 (8th Cir. 1993)).

1211, 1219 (8th Cir. 2001). "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Meyerpeter v. Astrue, 902 F.Supp.2d 1219, 1229 (E.D. Mo. 2012) (citations omitted).

The court's role on judicial review is to determine whether the ALJ's findings are supported by substantial evidence in the record as a whole. Pate–Fires v. Astrue, 564 F.3d 935, 942 (8th Cir.2009). In determining whether the evidence is substantial, the court considers evidence that both supports and detracts from the Commissioner's decision. Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007). As long as substantial evidence supports the decision, the court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. See Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir.2002).

To determine whether the ALJ's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1) The findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

Brand v. Sec'y of Dept. of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980).

## V.    Discussion

In his appeal of the Commissioner's decision, Poppe raises several issues. First, he alleges the ALJ erred in determining that his depression and history of cerebral vascular accident

9

("CVA") were not severe impairments. (Doc. No. 14 at 7-8) Second, Poppe argues the ALJ failed to give controlling weight to the opinion of his treating physician, Dr. Wendell Nickerson. (Id. at 8-10) Third, Poppe contends the ALJ failed to properly evaluate the severity of his fibromyalgia. (Id. at 11-12) Fourth, Poppe argues the ALJ's credibility findings are not supported by substantial evidence. (Id. at 12-13) Finally, Poppe contends the ALJ erred in evaluating him as a younger individual. (Id. at 13-14) Upon review, the Court finds substantial evidence in the record to support the ALJ's decision.

## 1. Severity of impairments

Poppe first argues the ALJ erred in determining that his depression and history of CVA were not severe impairments. For an impairment to be severe, a claimant must show he has a medically determinable impairment or combination of impairments. See 20 C.F.R. §§ 404.1520(c), 404.1521(a). Allegations alone will not establish disability; only evidence from acceptable medical sources (such as licensed physicians) can establish the existence of a medically determinable impairment. Sloan v. Astrue, 499 F.3d 883, 888 (8th Cir. 2007). With regard to Poppe's alleged history of CVA, the ALJ noted the lack of medical evidence to support his allegation. "Other than claimant's reporting of having suffered strokes, there is no medical evidence to support such claims nor any evidence of neurological deficits or residuals." (Tr. 13, 16)

Poppe relies on medical records reporting a history of strokes as evidence of the incidents, arguing that "the CVAs are real as doctors do not typically order testing and include them in the history if there is no evidence of them having occurred." (Doc. No. 14 at 7) During a consultation for evaluation of a sublingual[3] mass on November 12, 2009, Poppe reported a

_____

[3] One of the major salivary glands located in the floor of the mouth. www.entassociates.com/salivary_glands.htm (last visited Dec. 17, 2014).

10

history of "three transient ischemic attacks with residual numbness and tingling in his left hand," "constant headaches with visual problems and photophobia," and deteriorating cervical disc disease. (Tr. 240) The ALJ noted the treatment records from this consultation report that a 2007 MRI of Poppe's brain was reviewed and showed no intracranial abnormalities other than sinusitis. (Id.)

On November 20, 2009, Poppe presented for a carotid ultrasound and was noted as having a "history of stroke." (Tr. 226) The ALJ noted that the ultrasound found less than 40 percent stenosis of the bilateral internal carotid arteries. (Id.) On April 20, 2010, Poppe reported to Dr. Hevel that he had had a stroke at age 18 (Tr. 266), and on August 4, 2010, reported to Dr. Nickerson that he thinks he had a stroke two weeks earlier after experiencing sharp pain in his head and numbness on his left side. (Tr. 272) The ALJ notes in her opinion that thereafter, Dr. Nickerson's treatment records reflect a diagnosis of history of cerebrovascular accidents. (See Tr. 270-72, 279-289, 300-312)

Records that mention a claimant's statements about his own medical history are not objective diagnoses or clinical findings from a medical professional. No such diagnoses or clinical findings exist in the record. Poppe's unsupported allegations cannot establish a severe impairment. Sloan, 499 F.3d at 888. See also Dixon v. Astrue, 2011 WL 9126, at *24-25 (E.D.Mo. Jan. 3, 2011) (holding ALJ was justified in not adopting the conclusions of doctor's report which was primarily a summary of plaintiff's own statements about his symptoms and medical history and not supported by any detailed, clinical or diagnostic evidence). The ALJ explained why she found Poppe's CVA non-severe and her finding is supported by substantial evidence in the record.

11

With regard to his allegations of depression, Poppe relies on Dr. Nickerson's observations on July 7, 2011 and again on August 13, 2012, that he had a "flat affect" (Tr. 280, 320), and his hearing testimony that he does not have much desire to do anything anymore. (Tr. 49) He argues that while his depression may be due to his physical issues, this does not diminish the effect of depression. (Doc. No. 14 at 7)

In her decision, the ALJ noted that Poppe's treating physician, Wendell Nickerson, D.O., prescribed Celexa, an antidepressant, but there is no mention of a diagnosis of depression, anxiety or insomnia in his treatment records or any complaints about symptoms of such impairments. (Tr. 18, 271, 285, 288) Neurological examinations conducted on October 1, 2010, December 23, 2010, and June 13, 2011, were described as within normal limits. (Tr. 281, 284, 286) The ALJ found that Poppe's mental status has never deteriorated to the point where he needed psychiatric intervention at an emergency room, crisis center, or inpatient psychiatric hospital. (Tr. 18) He has not sought or been referred for formal treatment by a psychiatrist, psychologist, or psychotherapy. (Id.)

"The absence of any evidence of ongoing counseling or psychiatric treatment or of deterioration or change in [claimant's] mental capabilities disfavors a finding of disability." Roberts v. Apfel, 222 F.3d 466, 469 (8th Cir. 2000) (citing Dixon v. Sullivan, 905 F.2d 237, 238 (8th Cir. 1990). See also Williams v. Sullivan, 960 F.2d 86, 89 (8th Cir. 1992) (absence of treatment indicates that a mental impairment is nonsevere). Further, prescription of antidepressant drugs is not conclusive evidence that the mental impairment is disabling. See Matthews v. Bowen, 879 F.2d 422, 424 (8th Cir. 1989); Harris v. Astrue, 2012 WL 785493, at *7 (E.D. Mo. Mar. 9, 2012). Accordingly, the ALJ found that the objective evidence of record

did not establish any severe medically determinable and diagnosed mental impairment, and substantial evidence supports that determination (Tr. 18).

Poppe argues alternatively that even if his CVA and depression were considered non-severe, the ALJ erred by failing to consider their limiting affects in determining his RFC. (Doc. No. 14 at 8) It is unclear, however, what functional limitations Poppe believes should be included in the RFC to account for these impairments. As discussed above, there is no medical evidence to suggest any particular limitations as a result of those impairments. Insofar as he suffers from CVA and depression, the ALJ accounted for this by proscribing an RFC which limits Poppe to light work. Bridges v. Astrue, 2012 WL 3637712, at *8 (W.D.Mo. Aug. 22, 2012). In sum, the RFC addresses Poppe's complaints and thus, there is no reason to reject the RFC as inadequate.

## 2. Treating physician

Poppe argues the ALJ erred in failing to giving controlling weight to the opinion of his treating physician, Wendell Nickerson, D.O. On October 21, 2011, Dr. Nickerson opined that Poppe was limited to lifting and carrying up to 20 pounds frequently, standing and walking up to 2 hours in an 8-hour day, and must periodically alternate sitting and standing. He is limited with pushing and pulling in the upper and lower extremities as well as limited to only occasional handling, fingering, feeling, and reaching. He is limited to never balancing, and only occasional climbing, stooping, kneeling, crouching, and crawling. Dr. Nickerson also opined that Poppe must avoid exposure to vibrations and work hazards. (Tr. 291-94) With respect to exertional limitations, he found that Poppe's "energy level and degree of fibromyalgia pain are a variable and unpredictable component of his life. He is therefore a totally unreliable employee as a result. He at times is capable of exertion in short bursts but has no stamina. His pain levels are at times

13

severe and at others mild." (Tr. 292) With respect to postural and manipulative limitations, Dr. Nickerson found that "balancing would be out of the question [secondary] to his CVA," and that the remaining activities/functions "are completely dependent on the level of pain and energy his fibromyalgia is generating that day/week." (Tr. 292-93) As for visual/communicative limitations, Dr. Nickerson found that "[s]peaking seems to be slow but that is probably due to post CVA not the fibromyalgia. [Poppe's] affect and communication skills seem to be affected as well." (Tr. 293) On May 11, 2012, Dr. Nickerson submitted an updated Medical Source Statement-Physical (MSS) wherein he opines that Poppe's condition remains "essentially the same." (Tr. 296-299)

"A treating physician's opinion is given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." Gieseke v. Colvin, 770 F.3d 1186, 1188 (8th Cir. 2014). See also Goff, 421 F.3d at 790. "Yet such weight is neither inherent nor automatic and does not obviate the need to evaluate the record as a whole." Cline v. Colvin, 771 F.3d 1098, 1103 (8th Cir. 2014) (internal citations omitted). The Commissioner " 'may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions.' " Id. (quoting Anderson v. Astrue, 696 F.3d 790, 793 (8th Cir.2012)). See also Wildman v. Astrue, 596 F.3d 959, 964 (8th Cir.2010). If an ALJ discounts a treating physician's opinion, he must give "good reasons" for doing so. Doherty v. Colvin, 2014 WL 3530898, at *2 (W.D.Mo. July 16, 2014) (citing Dolph v. Barnhart, 308 F.3d 876, 878–79 (8th Cir.2002)). Once the ALJ has decided how much weight to give a medical opinion, the Court's role is limited to reviewing whether substantial evidence supports this determination, not

deciding whether the evidence supports the plaintiff's view of the evidence. Id. (citing Brown v. Astrue, 611 F.3d 941, 951 (8th Cir.2010)).

In determining that Poppe has the RFC to perform light work, the ALJ did not completely disregard Dr. Nickerson's opinions, as she gave "significant weight" to his opinions to the extent he found Poppe limited to less than light exertional work activity with additional postural, manipulative and environmental limitations. Instead, the ALJ disagreed with Dr. Nickerson's opinion that Poppe was limited to standing and walking 2 hours in an 8-hour day with the need to alternate sitting and standing, or being limited to only occasional handling, fingering, feeling, and reaching. (Tr. 19)[4] The ALJ explained that these limitations are not supported by Dr. Nickerson's own treatment records or by the objective medical evidence, and that there are no diagnostic findings on which to base such limitations. (Id.)

_____

[4] The ALJ also considered the opinions of Dianne Watson, an alternative medicine provider, and Michael Ditmore, M.D., the state agency medical consultant. Ms. Watson opined that Poppe is limited to lifting and carrying less than 10 pounds occasionally, standing and walking less than 2 hours in an 8-hour workday, and pushing and pulling in the upper and lower extremities. He is also limited to only occasional handling, fingering, feeling and reaching, occasional climbing, balancing, stooping, kneeling, crouching, and crawling, and must avoid temperature extremes and pulmonary irritants. (Tr. 19, 204-09) Dr. Ditmore opined that Poppe is capable of medium work activity. (Tr. 273-78)

Ms. Watson is not an "acceptable medical source" to establish a medically determinable impairment. See 20 C.F.R. § 404.1513; 416.913. Nevertheless, "other sources" may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function. Beers v. Astrue, 2011 WL 1226948, at *11 (E.D. Mo. Mar. 30, 2011) (quoting SSR 06-03p). The ALJ is permitted great discretion in determining what weight, if any, to give such testimony. Raney v. Barnhart, 396 F.3d 1007, 1010 (8th Cir. 2005). Here, the ALJ gave "little weight" to Ms. Watson's opinions as there were no treatment records from her to support her assessed limitations. (Tr. 19) Poppe does not take issue with the ALJ's treatment of Ms. Watson's opinions.

The ALJ gave "less weight" to Dr. Ditmore's opinions, finding the objective medical evidence supported the conclusion that Poppe's symptoms and limitations are more limited. (Tr. 19) Again, Poppe does not take issue with the ALJ's treatment of Dr. Ditmore's opinions.

In response, Poppe sets out the evidence he contends is consistent with Dr. Nickerson's opinions about his ability to stand and walk, alternate postures, and handle by means of a summary of Dr. Nickerson's treatment notes. (Doc. No. 14 at 9-10) Poppe does not, however, explain how these treatment notes support Dr. Nickerson's opinions. In fact, there is nothing in Dr. Nickerson's notes regarding Poppe's inability to walk, the necessity of postural changes, or any limited ability to handle. As correctly noted by the Commissioner, this is sufficient justification for the ALJ's treatment of Dr. Nickerson's opinions. See Choate v. Barnhart, 457 F.3d 865, 870 (8th Cir. 2006) (ALJ permitted to disregard treating cardiologist's conclusion that claimant was disabled; cardiologist failed to explain why claimant could not perform light or sedentary job and treatment notes did not indicate that any of claimant's doctors restricted his activities or advised him to avoid prolonged standing or sitting.). See also Hogan v. Apfel, 239 F.3d 958, 961 (8th Cir. 2001) (ALJ did not err in discounting treating physician's MSS, where the ALJ found that the limitations detailed in the statement were never mentioned in physician's numerous treatment records).

Additionally, the ALJ did not err in discounting Dr. Nickerson's opinion because they appeared to rely on, at least in part, Poppe's self-reported symptoms. An ALJ may give less weight to a doctor's opinion that is based on a plaintiff's self-reported complaints, particularly when the plaintiff is not credible. See Kirby v. Astrue, 500 F.3d 705, 709 (8th Cir.2007). In sum, the Court finds the ALJ's treatment of Dr. Nickerson's opinions is supported by valid reasons and substantial evidence in the record as a whole.

### 3. Fibromyalgia

Fibromyalgia is a disease for which there are no laboratory tests to determine its presence or severity. Sarchet v. Chater, 78 F.3d 305, 306 (7th Cir.1996); Brosnahan v. Barnhart, 336 F.3d

16

671, 672 n. 1 (8th Cir. 2003). Additionally, and "of greatest importance to disability law, [fibromyalgia's] symptoms[5] are entirely subjective." Waters v. Astrue, 2010 WL 2522702, at *8 (E.D.Mo. June 16, 2010) (quoting Tilley v. Astrue, 580 F.3d 675, 681 (8th Cir.2009)).

Poppe argues the ALJ erred in evaluating the severity of his fibromyalgia in determining his RFC. (Doc. No. 14 at 11-12) Specifically, the ALJ stated there were no laboratory findings to confirm a diagnosis of fibromyalgia and little mention in the treatment notes of widespread pain or complaints of fatigue to support such a diagnosis. (Tr. 18) Further, the record did not show a referral to or treatment by a rheumatologist. (Id.) According to Poppe, this demonstrates that the ALJ did not believe he had fibromyalgia and ultimately failed to consider how the condition affected his RFC. (Doc. No. 14 at 12)

Here, the ALJ actually found Poppe's fibromyalgia to be a severe impairment. (Tr. 13) Although Poppe takes exception to the ALJ's treatment of this impairment, he fails to explain what additional limitations the ALJ should have included in the RFC. The ALJ included all of the limitations she found credible on the record as a whole, including Poppe's severe impairment of fibromyalgia, and substantial evidence supports the RFC.

## 4. Credibility findings

"The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." Holmstrom v. Massanari, 270 F.3d 715, 721 (8th Cir.2001). In assessing a claimant's credibility, the ALJ must consider: (1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage,

---

[5] Symptoms of the disease include widespread pain, fatigue, disturbed sleep, and stiffness and tender spots in certain fixed locations of the body. Sarchet, 78 F.3d at 306. In order to be diagnosed with fibromyalgia, a patient to must have at least 11 of 18 specific tender point spots on the body. Id. In addition to these tender points, people with the disease experience sleep disturbances, morning stiffness, irritable bowel syndrome, chronic headaches, temporomandibular joint dysfunction, anxiety, and cognitive dysfunction. Waters, 2010 WL 2522702, at *9 (citations omitted).

17

effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints. Finch v. Astrue, 547 F.3d 933, 935 (8th Cir.2008); Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir.1984). "An ALJ who rejects [subjective] complaints must make an express credibility determination explaining the reasons for discrediting the complaints." Singh v. Apfel, 222 F.3d 448, 452 (8th Cir.2000). The ALJ does not have to explicitly discuss each factor; "[i]t is sufficient if he acknowledges and considers [the] factors before discounting a claimant's subjective complaints." Goff, 421 F.3d at 791.

Here, the ALJ noted instances in which Poppe's subjective complaints conflicted with the objective medical evidence. The absence of an objective medical basis to support the degree of subjective complaints is an important factor in evaluating the credibility of the claimant's testimony and complaints. Russell v. Sullivan, 950 F.2d 542, 545 (8th Cir. 1991). See also Forte v. Barnhart, 377 F.3d 892, 895 (8th Cir.2004) (lack of objective medical evidence is a factor an ALJ may consider).

As discussed above, the records contained no documentation to confirm Poppe's alleged history of CVA. A carotid ultrasound found less than 40 percent stenosis of the bilateral carotid arteries (Tr. 224-236), and an MRI of Poppe's brain performed in 2007 found no intracranial abnormalities other than sinusitis. (Tr. 226) The medical record also did not reflect that Poppe sought treatment from an orthopedist or neurosurgeon for evaluation and treatment of his back, neck and knee pain. In particular, there are no diagnostic studies on which to base Poppe's complaints of neck and upper back pain other than a CT scan of the cervical spine that showed minimal curvature of the thoracic spine and no evidence of degenerative joint or disc disease. Medical records dated April 20, 2010 from R.W. Hevel, D.O., indicate some mild paravertebral

muscle spasms in the thoracic and cervical spine, but no neurological deficits. (Tr. 270-72) Dr. Hevel recommended osteopathic manipulative treatment for acute somatic dysfunction of the thoracic and cervical spine. (Tr. 265-69) There are no records showing that Poppe sought treatment of migraine headaches or that his migraines occurred with enough frequency to result in work absenteeism. Despite Dr. Nickerson's treatment notes reflecting a diagnosis of fibromyalgia, there is little mention in those notes of widespread pain or complaints of fatigue to support the diagnosis. Further, with regard to Poppe's allegations of depression, anxiety and insomnia, there was nothing in the record to establish a severe medically determinable and diagnosed mental impairment. He has never needed psychiatric intervention or inpatient psychiatric hospitalization nor sought or been referred to formal treatment by a psychiatrist or psychologist. Although an ALJ may not disregard subjective allegations solely because they are not fully supported by objective medical evidence, she may properly discount them where, as here, there are inconsistencies in the record as a whole. See Gonzalez v. Barnhart, 465 F.3d 890, 895 (8th Cir. 2006) (citing Ramirez v. Barnhart, 292 F.3d 576, 581 (8th Cir. 2002)); 20 C.F.R. § 404.1529(c).

The ALJ also considered the inconsistencies between Poppe's allegations and his activities of daily living. Specifically, he is able to live and function independently. He reported being able to take care of his personal needs and perform essential household chores, including cooking, cleaning, laundry, shopping, and taking care of pets. (Tr. 164-174) Poppe's two sons also confirmed their father was able to live independently. (Tr. 175-82, 195-98, 199-202) To be sure, there are cases in which a claimant's ability to engage in certain personal activities "does not constitute substantial evidence that he or she has the functional capacity to engage in substantial gainful activity." Ponder v. Colvin, 770 F.3d 1190, 1196-96 (8th Cir. 2014) (citing

19

Singh, 222 F.3d at 4523; Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir. 1998)). But that is not the case here. To the extent Poppe's daily activities are restricted, the ALJ observed they appear restricted mainly as a matter of choice, rather than medical prescription. (Tr. 16)

An ALJ is required to consider medication side effects when assessing credibility. Williams v. Colvin, 2013 WL 5433344, at *13 (E.D.Mo. Sept. 27, 2013) (citing Polaski, 739 F.2d at 1321–22). The ALJ expressly acknowledged her duty to consider the "type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms." (Tr. 15) Poppe testified he took his medications as prescribed, including Topiramate, Hydrocodone and Citalopram. A review of the record shows that Poppe did not report any side effects from his medications such as drowsiness. (Tr. 16) The ALJ further found Poppe's good work record prior to the alleged onset date of disability did not enhance or detract from his credibility. (Id.)

Accordingly, in a manner consistent with and as required by Polaski, the ALJ considered Poppe's subjective complaints on the basis of the entire record and set out numerous inconsistencies that detracted from his credibility. Because the ALJ's determination not to credit Poppe's subjective complaints is supported by good reasons and substantial evidence, the Court defers to her determination. Cobb v. Colvin, 2014 WL 6845850, at *14 (E.D.Mo. Dec. 3, 2014) (citing McDade v. Astrue, 720 F.3d 994, 998 (8th Cir.2013); Renstrom v. Astrue, 680 F.3d 1057, 1065 (8th Cir. 2012); Goff, 421 F.3d at 793).

### 5. Younger individual

The ALJ determines a claimant's age at the time of the hearing decision. Higgins v. Astrue, 2010 WL 681401, at *9 (E.D.Mo. Feb. 22, 2010) (citing Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 780 (6th Cir. 1987)). Poppe was 51 years old at the time of his

20

hearing on August 20, 2012, making him a person "closely approaching advanced age," for whom his age might seriously affect his ability to adjust to other work. 20 C.F.R. § 404.1563(d). However, in her decision, the ALJ notes that Poppe was born on April 22, 1961 and 48 years old on the alleged disability onset date of April 17, 2010 (Tr. 20), making him a younger person for whom his age would not seriously affect his ability to adjust to other work. (Tr. 20); 20 C.F.R. § 404.1563(c). Poppe contends he should have been evaluated under the "closely approaching advanced age category."[6] (Doc. No. 14 at 13) He argues that had the ALJ properly considered Dr. Nickerson's opinion in the RFC determination and the evidence of record regarding his fibromyalgia and migraines connected to a CVA, then under both the younger individual and closely approaching advanced age categories, he would be found disabled based on the guidelines. See 20 C.F.R. Part 404, Subpart P, Appendix 2, 201.14. (Doc. No. 14 at 13)

In response, the Commissioner argues that Poppe's argument is based on the mistaken premise that he should have been restricted to sedentary or less than sedentary work. (Doc. No. 21 at 18) However, as discussed above, the ALJ properly determined Poppe's RFC, finding him capable of a range of light work. For a person closely approaching advanced age with at least a high school education who can perform light work, Rules 202.13 through 202.15 of the guidelines dictate a finding of not disabled. Thus, even if the ALJ had evaluated Poppe as a person closely approaching advanced age, the Guidelines would compel the same result.

## VI. Conclusion

---

[6] Under the Guidelines or "Grids," three age categories are specified: a younger person (under age 50), a person closely approaching advanced age (age 50–54), and a person of advanced age (age 55 or older). 20 C.F.R. §§ 404.1563(c)-(e), 416.963(c)-(e).

For the foregoing reasons, the Court finds the ALJ's decision is supported by substantial evidence contained in the record as a whole, and, therefore, the Commissioner's decision should be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED** with prejudice. A separate judgment will accompany this Order.

Dated this 30th day of March, 2015.

**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**